EILEEN M. DECKER
United States Attorney
PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division
STEPHANIE S. CHRISTENSEN (Cal. Bar No. 236653)
RYAN WHITE (Cal. Bar No. 255201)
Assistant United States Attorney
Cyber and Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3756/2296
    Facsimile: (213) 894-8601
    E-mail:    stephanie.christensen@usdoj.gov
              ryan.white@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 14-368-MMM |
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN INADMISSIBLE EVIDENCE AT TRIAL |
| v. | |
| DAVID KEVIN ELAM, II, | Hearing Date: November 9, 2015 |
| Defendant. | Hearing Time: 1:15 p.m.<br>Location: Courtroom of the Hon. Margaret M. Morrow |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Stephanie S. Christensen and Ryan White, hereby files its motion *in limine* to exclude certain inadmissible evidence at trial pursuant to Rules 402, 403 and 412 of the Federal Rules of Evidence.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 19, 2015          Respectfully submitted,

                                            EILEEN M. DECKER
                                            United States Attorney

                                            PATRICIA A. DONAHUE
                                            Assistant United States Attorney
                                            Chief, Criminal Division

                                                       /s/
                                            STEPHANIE CHRISTENSEN
                                            RYAN WHITE
                                            Assistant United States Attorney

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.   INTRODUCTION......................................................1

II.  STATEMENT OF FACTS................................................2

     A.   Defendant Threatens to Make N.A. Want to Kill Herself and
          Accesses Her Facebook Account Without Authorization......2

     B.   Defendant Posts Nude Photos and Sexually Explicit Videos
          of N.A. Online, and Encourages Men to Have Sex with Her..4

     C.   Defendant Swats N.A., Attempts to Get N.A. Expelled From
          Law School, and Continues Posting Online.................6

     D.   Defendant Obstructs the Federal Investigation............7

III. ARGUMENT..........................................................7

     A.   Rule 412 of the Federal Rules of Evidence................7

     B.   Rule 403 of the Federal Rules of Evidence...............11

IV.  CONCLUSION.......................................................13

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

Cases

B.K.B. v. Maui Police Dept.,
    276 F.3d 1091 (9th Cir. 2002)................................9, 10

Cohn v. Papke,
    655 F.2d 191 (9th Cir. 1981)....................................14

Doe v. United States,
    666 F.2d 43 (4th Cir. 1981).....................................10

United States v. Sayer,
    No. 2:11-CR-113-DBH, 2015 WL 5568074
    (D. Me. Sept. 21, 2015) .......................................7, 8

United States v. Torres,
    937 F.2d 1469 (9th Cir. 1991).................................11, 12

United States v. Withorn,
    204 F.3d 790 (8th Cir. 2000)....................................11

Wood v. Alaska,
    957 F.2d 1544 (9th Cir. 1992)...................................10

Statutes

18 U.S.C. § 1028A(a)(1)..........................................1, 12

18 U.S.C. § 1030(a)(2)(C)........................................1, 12

18 U.S.C. § 1030(b)..............................................1, 12

18 U.S.C. § 1030(c)(2)(C)(B)(ii).................................1, 12

18 U.S.C. § 1519.................................................1, 12

18 U.S.C. § 2261A....................................................7

18 U.S.C. § 2261A(2)(A)..........................................1, 12

18 U.S.C. § 2261(b)(5)...........................................1, 12

Rules

Fed. R. Evid. 401...................................................11

Fed. R. Evid. 402................................................1, 11

```
Fed. R. Evid. 403.............................................1, 11
Fed. R. Evid. 412..........................................1, 8, 9
Fed. R. Evid. 412(a).............................................7
Fed. R. Evid. 412(b)............................................10
Fed. R. Evid. 412(c)(1).........................................10
Fed. R. Evid. 412(c)(2).........................................10
```

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant David Elam ("defendant") is charged in a four-count indictment with cyberstalking (18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5)); unauthorized access to a protected computer to obtain information in furtherance of a criminal act (18 U.S.C. §§ 1030(a)(2)(C), (b), (c)(2)(B)(ii)); aggravated identity theft (18 U.S.C. § 1028A(a)(1)); and destruction of records in a federal investigation (18 U.S.C. § 1519).  The charges stem from a period between May and July 2013 in which defendant stalked his ex-girlfriend, victim N.A., by, among other things, creating a fake online account in her likeness and encouraging men to contact her for sex, accessing or attempting to access her Facebook account, posting sexually explicit photographs and videos to the Internet, sending emails containing links to those photographs and videos to her family and friends, attempting to destroy her reputation at the law school she was attending, and reporting to the Santa Monica Police Department that she was distributing narcotics out of her home.

Trial is scheduled for November 17, 2015.  The government has asked defense counsel whether they intend to attempt to introduce evidence of the victim's sexual history, and defense counsel stated that they could not take a position at this time.  Accordingly, the government hereby files this motion in limine to exclude argument, questions, and evidence by the defense concerning the victim's sexual history, pursuant to Rules 402, 403, and 412 of the Federal Rules of Evidence.

**II.  STATEMENT OF FACTS**

The government expects to prove the following facts at trial.

**A.  DEFENDANT THREATENS TO MAKE N.A. WANT TO KILL HERSELF AND ACCESSES HER FACEBOOK ACCOUNT WITHOUT AUTHORIZATION**

Victim N.A. met defendant in November 2012 on the dating site OkCupid.  They communicated online for a few months — N.A. located in California and defendant located in Virginia — meeting up once in the Central District of California in February 2013.  During the course of their relationship, N.A. sent defendant numerous photographs, many of which were nude and otherwise sexually explicit, and approximately four sexually explicit videos.

In early May 2013, defendant decided to end the relationship because (according to him) N.A. was too high-maintenance and (according to N.A.) he suspected her of cheating on him.  On May 8, 2013, the following text message conversation occurred.  As part of this text message string, defendant sent N.A. two pictures she had previously sent him — and only him — during their relationship, both of which were sexually explicit.

> DEFENDANT:   What's this about?
>
> N.A.:   I was exploring how you may have accessed my stuff, but I deleted the attempt immediately so it's nothing.
>
> DEFENDANT:   Please don't do this.  Please don't mess with my stuff.  I'm sure you have better things to do.  Both of us would rather me feel sorry for you than pissed at you
>
> N.A.:   Deal
>
> DEFENDANT:   Plus if my email/iTunes/Facebook is compromised that would allow people to see vids, pics, messages neither of us want people to see . . .

  N.A.:  You don't have to worry about that, it won't happen.

  DEFENDANT: I'm not worried. But attempting to access someone else's accounts could jeopardize bar admittance.

  DEFENDANT:  But I did find it ironic how paranoid you were last night. Good thing it ended before you had some real explaining to do

  DEFENDANT:  That awkward moment when errbody seent what I seent. . . Hopefully ogurl can flip a burger or two

  DEFENDANT:  I'm an asshole. Sucks for you.

  N.A. also had a recorded phone conversation that day with defendant. Defendant ended the May 8, 2013 conversation by stating the following:

  N.A.:  I need to. . . I need to hang up in a second. . .

  DEFENDANT:  Fuck you. . . I mean like, fuck this whatever. . . you're done you're ruined cause I will see to it after this. . . fuckin. . . I'll put it this way, fuckin. . . it would take an act of fuckin God for you to pass the bar. It would take an act of God for you to make it through law school without killing yourself after what I do to you.[1]

  That same day, N.A. received two emails from Facebook, which she provided to the FBI. The first indicated that "[s]omeone tried to change [her] Facebook password and login email using the account recovery process." About 20 minutes later, she received an email from Facebook stating that "[s]omeone tried to change[her] Facebook password and set [her] login email to +15405807800 by answering [her] security question" from IP address 108.4.173.180. The phone number (540) 580-7800 is defendant's number, and the IP address

---

[1] Earlier in their relationship, N.A. had talked to defendant about her brother's suicide, and how this topic was sensitive to her.

3

listed in the email ties back to his residence.  Somebody also attempted to reset the password to N.A.'s Twitter account that same day as well.

**B.   DEFENDANT POSTS NUDE PHOTOS AND SEXUALLY EXPLICIT VIDEOS OF N.A. ONLINE, AND ENCOURAGES MEN TO HAVE SEX WITH HER**

As promised in his phone conversation, defendant then began a campaign to harass N.A.  In all, defendant's conduct resulted in nude and sexually explicit photographs and videos being posted to at least 24 websites.

On May 9, 2013, defendant created a public OkCupid account using a variant of N.A.'s name, along with numerous images N.A. had sent only to defendant — including one of her in her bra and another that depicts a recently used sex toy.  He posted Q&A answers on the site that overtly indicated N.A. was interested in sex, and revealed that she lived in Santa Monica, CA.  He then engaged in conversations with over 20 users encouraging them to contact N.A. for a tryst.  A sampling of those conversations are as follows.  In these conversations, defendant gave out N.A.'s true cell phone, which is how she became aware of the OkCupid profile (because at least nine of the OkCupid users contacted N.A. directly, one of whom stated that he was on the road to her house later that night):

LovingUs

- nee_coal: I'll be honest with you. I've been studying for the past 72 hours straight. I'm sexually frustrated and tired. Lets cut the bullshit and chivalry act. I just need a good clean hookup.

- LovingUs: I am ready! Lets make a date.

- nee_coal: I can hang out tomorrow after my final. In the mean time text me a pic/appetizer for tomorrow. Ill be your dessert.

1cadillac

- 1cadillac: nice i like your style.im at work at the moment and im off at 6:00 p.m. tonight do you wanna meet tonight i could come to your place or we could get a room how ever you feel more comfortable.oh yeah what is your cell number?

- nee_coal: You should just come over. I could use a study break. Hopefully you'll break me off. Can I get a taste of what I'll be tasting tonight? Pic please.

attybush

- attybush: I'm down in North San Diego County. Are you inviting me up to help relieve your stress?

- nee_coal: I most definitely am

The next day, on May 10, 2013, defendant spoke with a detective from the Salem, Virginia Police Department who had come to investigate defendant's conduct toward N.A. and admitted to creating online profiles of N.A. (including OkCupid) and to showing nude pictures of N.A. to his friends. Undeterred, that same day defendant posted a sexually explicit video to the pornography website www.xhamster.com entitled "[N.A.] plays with her haggard snatch." N.A. received text messages from at least three men in response to this video, indicating some communication between those men and defendant had occurred.

Defendant continued his harassment on May 11, 2013, when he started targeting N.A.'s family and friends. That day, he spoofed the email account of one of N.A.'s law school classmates and sent an email to N.A.'s mother with a link to an Xtube.com page. That page had a video of N.A. masturbating that she had sent only to

5

defendant, entitled "Former Pepperdine Law student turned video vixen bate." He sent a similar email to one of her classmates using a spoofed account of Kenneth Starr.

On May 12 and 14, 2013, despite being served with a Temporary Restraining Order, defendant uploaded two videos to the pornography website hardsextube.com, both of which N.A. had sent only to defendant.

### C. DEFENDANT SWATS N.A., ATTEMPTS TO GET N.A. EXPELLED FROM LAW SCHOOL, AND CONTINUES POSTING ONLINE

Defendant resurfaced on June 10, 2013, when he submitted an online complaint to the Santa Monica Police Department ("SMPD") stating that N.A. was distributing Xanax, Valium, Adderall, and medical marijuana out of her home and at Pepperdine. On July 3, 2013, the SMPD visited N.A's residence to investigate.

On June 17, 2013, defendant sent an email to N.A.'s law school dean and numerous classmates with a link to a presentation. That presentation — a copy of which was found in defendant's personal email account — provided excerpts of numerous Pepperdine Law School Honor Code provisions, followed by text messages between N.A. and defendant purportedly establishing that N.A. had violated Pepperdine's honor code. Among the violations he included were possession or distribution of prescription drugs, having others edit your papers, and vandalizing school property.

On June 25, 2013, defendant again posted nude photographs of N.A., this time to Ugotposted.com. On July 19, 2013, defendant posted one of the sexually explicit videos of N.A. he had previously posted on Xhamster.com to Motherless.com.

### D. DEFENDANT OBSTRUCTS THE FEDERAL INVESTIGATION

On September 17, 2013, the FBI executed a search warrant at defendant's residence. Among other things, the FBI seized a laptop, two iPhones, and an iPad. Defendant admitted in his interview with the FBI that the laptop, one of the iPhones, and the iPad would contain evidence of his crimes.

Shortly after the agents left his house, defendant executed a remote-wipe command for his personal iPhone. A few days later, he did it again, and also tried to remotely wipe his laptop and his iPad. When the digital devices arrived at FBI Los Angeles, defendant's personal iPhone had been successfully wiped, whereas the other devices had not.

## III. ARGUMENT

### A. RULE 412 OF THE FEDERAL RULES OF EVIDENCE

Rule 412 of the Federal Rules of Evidence states that in cases involving allegations of sexual misconduct, "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" and "[e]vidence offered to prove any alleged victim's predisposition" are inadmissible. Fed. R. Evid. 412(a).

At least one district court has held that Rule 412 applies where a defendant is charged with cyberstalking. See United States v. Sayer, No. 2:11-CR-113-DBH, 2015 WL 5568074, at *8 (D. Me. Sept. 21, 2015). In Sayer, the defendant was convicted of cyberstalking a woman in violation of 18 U.S.C. § 2261A. On habeas, the defendant claimed that his counsel was ineffective for failing to pursue "a consent defense based on the victim's past sexual history, which, Petitioner allege[d], included voluntarily and publicly sharing her

7

name, address, and sexually explicit information on the Internet during and after her relationship with Petitioner." Id.

In denying the petition, the court held that

> the victim's past sexual history would not have been admissible under Fed. R. Evid. 412, which states that "evidence offered to prove that a victim engaged in other sexual behavior" is not admissible. Rule 412(b)(1)(B) sets forth an exception for "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor." Rule 412(b)(1)(C) provides an exception for "evidence whose exclusion would violate the defendant's constitutional rights." Neither of these exceptions applies. The consent referred to in Rule 412(b)(1)(B) is the victim's consent to the conduct of which the defendant is accused, and Petitioner does not allege that the victim consented to his cyberstalking of her. A challenge based on Rule 412 would have been futile, and counsel was not required to pursue it.

Id.

Further, "sexual behavior" as used in the statute includes "all activities that involve actual physical conduct, i.e. sexual intercourse or sexual contact" or that imply sexual intercourse or sexual contact, such as use of contraceptives, birth of an illegitimate child, or diagnosis of venereal disease. Fed. R. Evid. 412, Advisory Committee Notes, Subdivision (a) (1994); see also B.K.B. v. Maui Police Dept., 276 F.3d 1091 (9th Cir. 2002) (in a sexual discrimination case, "sexual behavior" included testimony that victim modeled lingerie for two fellow police officers, once had an orgasm while using a sexual device and thinking of one of the witnesses and wanted to get the witness into bed and "hurt" him). The reference to "sexual predisposition" is "designed to exclude evidence that . . . the proponent believes may have a sexual

8

connotation for the fact finder," such as "the alleged victim's mode of dress, speech, or lifestyle." Id.

According to the advisory committee notes accompanying this section:
> The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.

Fed. R. Evid. 412, Advisory Committee Notes (1994). The Rule attempts to accomplish these objectives by "barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim." Id. This would include such evidence as the victim's alleged promiscuous behavior. See, e.g., Doe v. United States, 666 F.2d 43, 47 (4th Cir. 1981) ("[R]eputation and opinion concerning a victim's past sexual behavior are not relevant indicators of the likelihood of her consent to a specific sexual act or of her veracity"); Wood v. Alaska, 957 F.2d 1544, 1552-53 (9th Cir. 1992) ("The proferred evidence in this case is particularly prejudicial because it indicates not only that M.G. had extramarital sex, but also that she . . . had sex both for money and for the purpose of making pornography. . . They could also conclude, contrary to the rape law, that a woman with her sexual past cannot be raped, or that she somehow deserved to be raped after engaging in

9

these sexual activities. In light of these considerations, we conclude that the risk of confusion and prejudice is substantial.")

There are only three exceptions to this rule in criminal cases.  The following such evidence is admissible:

>     (a) Evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;
>     (b) Evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>     (c) Evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412(b).

Impeaching a victim's truthfulness and showing her capability to fabricate a story are not recognized exceptions to Rule 412.  See United States v. Torres, 937 F.2d 1469 (9th Cir. 1991)(evidence of incident that occurred approximately six months after alleged aggravated sexual abuse of victim was not admissible under Rule 412, and court rejected defendant's argument that this evidence was admissible because it was relevant to victim's credibility); see also United States v. Withorn, 204 F.3d 790, 795 (8th Cir. 2000).

Prior to admitting such evidence under one of these exceptions, "the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard."  Fed. R. Evid. 412(c)(2). In addition, any such "motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise."  Id.  Moreover, the defendant must provide written notice, in the form of a motion, of his interest to

use such evidence at least 14 days prior to trial, unless the court, for good cause, sets a different time. Fed. R. Evid. 412(c)(1).

Additionally, the Ninth Circuit has held that for the purposes of Rule 412, the term "past sexual behavior" includes all sexual behavior of the victim that precedes the date of trial, even if that behavior occurred after the alleged assault. See Torres, 937 F.2d at 1472.

At this time, defendant has not provided notice of intent to admit such evidence, despite the government's inquiry. However, even assuming that they did, none of the exceptions of Rule 412(b) apply. The instant case does not involve an allegation of sexual assault such that the source of semen, injury, or other physical evidence would be pertinent. Nor has defendant alleged that the victim consented to cyberstalking. Accordingly, any victim's alleged other sexual behavior or any alleged sexual predisposition has no place in this trial.

**B.     RULE 403 OF THE FEDERAL RULES OF EVIDENCE**

Furthermore, Rule 403 is sufficient to preclude cross-examination of witnesses on their past sexual experiences when such testimony's probative value would be substantially outweighed by unfair prejudice, or lacks relevance to the charges.

Rule 402 states that evidence which is not "relevant" is not admissible. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, even relevant evidence may be precluded where "its probative value is

11

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

To prevail at trial on the crimes charged, the government must prove the following elements beyond a reasonable doubt. First, for the cyber stalking charge (18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5)): (1) defendant used the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct; (2) that caused substantial emotional distress to the victim; (3) with the intent to kill, injure, harass, or cause substantial emotional distress to the victim; and (4) the victim was in another State of the United States.

Second, for the charge of unauthorized access to a protected computer to obtain information in furtherance of a criminal act (18 U.S.C. §§ 1030(a)(2)(C), (b), (c)(2)(B)(ii)): (1) defendant intentionally accessed, or attempted to access, without authorization, a protected computer; and (2) defendant committed the offense in furtherance of a criminal act.

Third, for the aggravated identity theft charge (18 U.S.C. § 1028A(a)(1)): (1) defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person; (2) defendant knew that the means of identification belonged to a real person; and (3) defendant's use of the means of identification was during and in relation to the felony violation described in the indictment.

Finally, for the destruction of records in a federal investigation charge (18 U.S.C. § 1519): (1) defendant knowingly makes alters, destroys, conceals, or covers up any record, document, or tangible object;(2) with intent to impede, obstruct or influence a federal investigation.

Relevant to the issue of identity, the government expects the victim to testify that she recognized certain sexually explicit images/videos posted to OkCupid, Xtube.com, Ugotposted.com, Xhamster.com, and Motherless.com, as those she had taken and sent only to defendant. This extremely limited evidence of the victim's sexual history is relevant to the charges against defendant.

Anything beyond such restricted scope, however, is irrelevant, will result in undue prejudice, confuse the issues, cause undue delay, waste the court's time, and certainly raise all of the concerns expressed by Congress when it enacted Rule 412. See, e.g., Cohn v. Papke, 655 F.2d 191, 194 (9th Cir. 1981) (holding that evidence of the victim's past sexual experiences should be excluded under Rule 403). Cross-examination or inquiry in this area should therefore be precluded.

**IV. CONCLUSION**

For the reasons stated above, the government respectfully requests that this Court grant its motion in limine and preclude argument, questions, and evidence by the defense concerning the victim's sexual history, pursuant to Rules 402, 403, and 412 of the Federal Rules of Evidence.

13