1  HILARY POTASHNER (Bar No. 167060)
   Federal Public Defender
2  CRAIG A. HARBAUGH (Bar No. 194309)
   (E-Mail:  Craig_Harbaugh@fd.org)
3  Deputy Federal Public Defender
   LISA SHINAR LABARRE (Bar No. 246429)
4  (E-Mail:  Lisa_LaBarre@fd.org)
   Deputy Federal Public Defender
5  321 East 2nd Street
   Los Angeles, California 90012-4202
6  Telephone:  (213) 894-1476
   Facsimile:  (213) 894-0081
7
   Attorneys for Defendant
8  DAVID ELAM

9

10                  **UNITED STATES DISTRICT COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12                       **WESTERN DIVISION**

13

| 14 | UNITED STATES OF AMERICA, | Case No. CR 14-368-MMM |
|---|---|---|
| 15 | Plaintiff, | **NOTICE OF MOTION AND MOTION TO SUPPRESS RECORDED TELEPHONE CALL** |
| 16 | v. | |
| 17 | DAVID ELAM, | Hearing Date: November 9, 2015 Hearing Time: 1:15 p.m. |
| 18 | Defendant. | |

19

20        TO PLAINTIFF UNITED STATES OF AMERICA AND ITS COUNSEL OF

21  RECORD:

22        PLEASE TAKE NOTICE that on Monday, November 9, 2015, at 1:15 p.m., or

23  as soon thereafter as the matter may be heard, Defendant David Elam, by and through

24  his attorneys of record, Deputy Federal Public Defenders Craig A. Harbaugh and Lisa

25  Shinar LaBarre, will move to suppress any and all telephone conversations recorded by

26  complaining witness N.A, as being in violation of 18 U.S.C. § 2511(2)(d).

27

28

1    This motion is based upon the attached Memorandum of Points and Authorities,

2  all files and records in this case, and any further evidence as may be adduced at the

3  hearing on this motion.

4

5                                              Respectfully submitted,

                                               HILARY POTASHNER
6                                              Federal Public Defender

7

8  DATED:  October 19, 2015          By   */s/ Lisa Shinar LaBarre*

9                                              LISA SHINAR LABARRE
                                               CRAIG A. HARBAUGH
10                                             Deputy Federal Public Defenders
                                               Attorneys for DAVID ELAM
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4       David Elam is charged in a four-count indictment with stalking, unauthorized

5   access to a protected computer, aggravated identity theft, and destruction of records.

6   The instant charges stem from Mr. Elam's failed relationship with N.A.  As recounted

7   in count one of the indictment, Mr. Elam is alleged to have made angry statements to

8   N.A. during a telephone call on May 8, 2013.  Indictment at 2.  Unbeknownst to Mr.

9   Elam, N.A. recorded her telephone conversation with Mr. Elam.  Moreover, as further

10  recounted in the indictment, earlier that same day Mr. Elam sent several text messages

11  to N.A., pleading with N.A. to stop accessing his Apple account.  Although Mr. Elam is

12  on trial for attempting to access N.A.'s Facebook account without authorization, it is

13  evident that N.A. had also attempted to access Mr. Elam's Apple account without

14  authorization.  N.A.'s conduct towards Mr. Elam was part of a pattern of criminal

15  conduct to harm and harass Mr. Elam, and included another attempt to record Mr.

16  Elam's telephone conversation (to which Mr. Elam vehemently objected once he was

17  made aware of the recording), and a call to local police reporting a purported suicide

18  threat by Mr. Elam.

19       As N.A. intercepted the May 8 conversation with Mr. Elam with the purpose to

20  commit criminal or tortious acts, the recorded conversation must be suppressed as in

21  violation of 18 U.S.C. § 2511(2)(d).

22

### II.

23

### STATEMENT OF FACTS

24       Sometime in late 2012, Mr. Elam and N.A. had engaged in a romantic

25  relationship after meeting on the online dating website "okcupid".  During the course of

26  the relationship, Mr. Elam lived in Salem, Virginia and N.A. lived Santa Monica,

27  California.  Thus, the majority of the couple's communications occurred over telephone

28  or text.

1        After Mr. Elam suspected N.A. of cheating, Mr. Elam ended the relationship on

2   May 6, 2013.  On May 8, 2013, at approximately 2:22 p.m.[1], Mr. Elam received an e-

3   mail from Apple asking to verify the contact address on his account.   Exhibit A, screen

4   shot of text message.  These e-mails are sent to Apple account holders when a person

5   attempts to access the account without authorization.  Alarmed, at 2:45 p.m. Mr. Elam

6   confronted N.A. via text message, "What's this about?"  *Id.*  N.A. immediately

7   admitted her attempt to gain access to Mr. Elam's account: "I was exploring how you

8   may have accessed my stuff…"  *Id.*  In response to N.A.'s hacking attempt, Mr. Elam

9   pleaded with N.A., "Please don't do this.  Please don't mess with my stuff."  *Id.*

10       Later that same day, at approximately 10:53 p.m., N.A. engaged in a telephone

11  conversation with Mr. Elam.  N.A. recorded this telephone conversation without Mr.

12  Elam's knowledge or consent.  N.A. and Mr. Elam had an emotionally charged

13  conversation for approximately 48 minutes, at the very end of which Mr. Elam is

14  alleged to have made the statement contained in the Indictment: "Fuck you … I mean

15  like fuck this whatever … you're done you're ruined cause I will see to it after this …

16  fuckin … I'll put it this way, fuckin … It would take an act of fucking God for you to

17  pass the bar.  It would take an act of God for you to make it through law school without

18  killing yourself after what I do to you."  Indictment.

19       Four days later, on May 14, 2013, Mr. Elam sent N.A. an apologetic text

20  message that stated, "Just know you're safe. You don't have to worry about me."

21  Exhibit B.  In response to this message, N.A. again attempted to record a telephone

22  conversation with Mr. Elam.  At the start of the May 14 call N.A. stated, "I'm

23  recording this again, ok?  …  I need you to say ok, I'm recording this, I'm not allowed

24  to talk to you otherwise."  Immediately after N.A.'s announcement Mr. Elam

25  terminated the call, to which N.A. exclaims in frustration, "he hung up on me!"  N.A.

26

27       [1] The screen shot of the e-mail states 5:22 p.m., as Mr. Elam was located in the
28  Eastern Time Zone.

1  apparently calls Mr. Elam back, and records her side of the conversation but not Mr.

2  Elam's responses.  While N.A. was speaking with Mr. Elam, she instructed a friend to

3  contact the Salem Police Department to report the text message as a "suicide threat" by

4  Mr. Elam.  When Mr. Elam learned from his uncle that N.A. had reported a suicide

5  threat, Mr. Elam begged N.A. to contact his uncle to ensure that his uncle knew that

6  there was no actual suicide threat.  Exhibit B ("He just called again. Call him please.

7  Keep calling until he picks up.")

8      N.A.'s surreptitious recording of Mr. Elam occurred shortly after she attempted

9  to hack into his Apple account, and she again attempted to record Mr. Elam after she

10  instructed a friend to make a false police report regarding a suicide attempt.  N.A.'s

11  recordings were thus part of a course of behavior to harass and harm Mr. Elam, and

12  must be suppressed.

### III.

### ARGUMENT

**THE RECORDED CONVERSATION MADE BY N.A. WAS FOR THE PURPOSE OF COMMITTING CRIMINAL AND TORTIOUS ACTS AND SHOULD THEREFORE BE SUPPRESSED**

**A.    Title III Prohibits the Interception of Oral Communications to Commit Criminal or Tortious Acts**

20      Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"),

21  18 U.S.C. §§ 2510-22, makes it a criminal offense to for any person to intentionally

22  intercept any wire, oral, or electronic communication in violation of the statute.

23  Although Congress created an exception where one party to the communication

24  consents to the recording, § 2511(2)(d) states that even one-party consent recordings

25  are unlawful if such recordings were made for a criminal or tortious purpose:

26      It shall not be unlawful under this chapter for a person not acting under

27      color of law to intercept a wire, oral, or electronic communication where

28      such person is a party to the communication or where one of the parties to

1      the communication has given prior consent to such interception **unless**

2      **such communication is intercepted for the purpose of committing any**

3      **criminal or tortious act in violation of the Constitution or laws of the**

4      **United States or of any State.**

5  (Emphasis added).  Additionally, § 2515 provides that the contents of a communication

6  intercepted in violation of 18 U.S.C. § 2511 may not be received in evidence before any

7  tribunal:  "Whenever any wire or oral communication has been intercepted, no part of

8  the contents of such communication and no evidence derived therefrom may be

9  received in evidence in any trial, hearing, or other proceeding in or before any court …

10  if the disclosure of that information would be in violation of this chapter."  Section

11  2518(10)(a) further specifies a procedure by which the sanctions of § 2515 are

12  implemented, providing that any aggrieved person may file a motion to suppress the

13  contents of any unlawfully intercepted oral communication.  To merit suppression

14  under §§ 2511(2)(d) and 2515, a defendant must only demonstrate by a preponderance

15  of the evidence that the recording at issue was made for a criminal or tortious purpose.

16  *United States v. McTiernan*, 695 F.3d 882, 888 (9th Cir. 2012).

17      Following §§ 2511(2)(d) and 2515, courts have indeed suppressed recordings

18  that were made for a criminal or tortious purpose.  In *United States v. Vest*, 639 F.

19  Supp. 899 (D. Mass. 1986), *aff'd*, 813 F.2d 477 (1st Cir. 1987), the defendant moved to

20  suppress a recorded conversation with a co-conspirator, contending that the recording

21  was made in violation of 18 U.S.C. § 2511(2)(d).  *Vest*, 639 F.Supp. at 901.  In

22  analyzing § 2511, the *Vest* court stated that proper reading of the statute must take into

23  account "the complexity of human motivation" and reflect "a common sense

24  understanding of 'the purpose.'"  Thus, the *Vest* court held that "§ 2511(2)(d) forbids

25  the recording of communications between private persons by or with the consent of one

26  of the parties when it is shown either (1) that the primary motivation, or (2) that a

27  determinative factor in the actor's motivation for intercepting the conversation was to

28  commit a criminal [or] tortious … act."  *Id.* at 904, quoting from *United States v.*

1   *Phillips*, 564 F.2d 32, 34 (8th Cir. 1977).  Ultimately, the *Vest* court suppressed the

2   recordings as it determined that the primary purpose and a determinative factor for the

3   co-conspirator's recording was to further a criminal act.  *Vest*, 639 F.Supp. at 908.

4   Thus, it need not be shown that the sole purpose for recording was criminal or tortious,

5   only that it was a primary motivation or a determinative factor in the actor's motivation

6   to intercept the conversation.  *United States v. Dale*, 991 F.2d 819, 841-42 (D.C. Cir.

7   1993), quoting *Vest*, 639 F.Supp. at 804.  Furthermore, an interception can be made for

8   a legitimate purpose and still be criminal or tortious so long as the primary motivation

9   was criminal or tortious.  *Sussman v. American Broadcasting Cos.*, 186 F.3d 1200,

10  1202 (9th Cir. 1999).

11          Additional courts have clarified the definition of "criminal or tortious act" to

12  include those recordings "created with the intent to blackmail, harass, or otherwise

13  harm the non-consenting party or a third party."  *United States v. Jiau*, 794 F.Supp.2d

14  484, 488 (S.D.N.Y. 2011).  This reading is supported by the legislative history of §

15  2511(2)(d), which emphasized the defensive purpose of the statute "to protect a

16  nonconsenting party to an intercepted conversation from the danger that another party

17  might use the contents for some criminal purpose such as blackmail or some other

18  tortious or injurious purpose."  *United States v. Underhill*, 813 F.2d 105, 110 (6th Cir.

19  1987) (discussing the legislative history of § 2511(2)(d): "The entire focus of Senator

20  Hart's comments was on protecting an innocent party from injury or embarrassment");

21  *Jiau,* 796 F.Supp.2d at 488, quoting 114 Cong. Rec. 14694-14695 (May 23, 1968)

22  ("Such one-party consent is also prohibited when the party acts in any way with an

23  intent to injure the other party to the conversation in any other way … For example, …

24  for the purpose of blackmailing the other party, threatening him, or publicly

25  embarrassing him.").

26          In other words, § 2515 was designed to protect a party's right to privacy by

27  excluding those conversations designed to harm the nonconsenting party.  *See Gelbard*

28  *v. United States*, 408 U.S. 41, 50 (1972) ("[Section 2515's] importance as a protection

1    for 'the victim of an unlawful invasion of privacy' could not be more clear."); *see also*

2    *United States v. Lam*, 271 F.Supp.2d 1182 (N.D. Cal. 2003) (suppressing recordings

3    made by a co-defendant against defendant Lam, stating "[a] significant purpose of §

4    2515 is to protect against the invasion of the defendant's privacy by the introduction of

5    unlawfully intercepted communications at trial.")  Thus, a recording made with the

6    motivation to embarrass, harass, or harm must be suppressed in order to protect the

7    nonconsenting party.

8    **B.    N.A.'s Surreptitious Recording of Her Conversation with Mr. Elam**

9    **Was For a Criminal or Tortious Purpose: To Harm and Harass Mr.**

10   **Elam**

11          N.A. surreptitiously recorded her conversation with Mr. Elam for the purpose of

12   harassing and harming him.  Shortly before her recorded conversation with Mr. Elam,

13   she attempted to obtain access to his Apple account without authorization, in violation

14   of 18 U.S.C. § 1030.  Mr. Elam confronted N.A. via text message, and she admitted to

15   the misconduct but attempted to explain it away.  Distressed at N.A.'s hacking attempt,

16   Mr. Elam pleaded with N.A. to stop accessing his Apple account and compromising his

17   e-mail and Facebook account.  Yet despite her apparent agreement to stop accessing his

18   account, that same day N.A. called Mr. Elam and secretly recorded their conversation, a

19   highly charged, emotional exchange discussing their failed relationship.

20          The appropriate inquiry here is not whether the contents of the intercepted

21   communication violated the law, but whether the *purpose* of the interception—its

22   intended use—was done for the purpose of facilitating some further impropriety.

23   *McTiernan*, 695 F.3d at 889; *see also Underhill*, 813 F.2d at 110 ("It is settled that the

24   legality of an interception is determined by the purpose for which the interception is

25   made, not by the subject of the communications intercepted.")  Given that N.A.

26   secretly recorded her conversation with Mr. Elam after she attempted to secretly (and

27   illegally) access Mr. Elam's personal information on his phone, it is clear that N.A.'s

28   interception was for the purpose of harassing Mr. Elam and violating Mr. Elam's right

1    to privacy.  Indeed, N.A. purposefully and secretly recorded a conversation when Mr.

2    Elam was at his most vulnerable: shortly after his breakup with N.A. and right after he

3    had pleaded with her to stop hacking into his Apple account.  Furthermore, several days

4    later N.A. again attempted to record Mr. Elam's conversation, and apparently aware

5    that her previous actions were improper[2], N.A. announced to Mr. Elam that she was

6    recording him and requested his permission to record.  Upon learning of the recording,

7    Mr. Elam immediately terminated the conversation.  Although N.A. called Mr. Elam

8    back and continued the recording, she recorded only her side of the conversation.  N.A.

9    used this conversation and to justify a call to Salem police reporting that Mr. Elam is

10    attempting to commit suicide, despite receiving no actual information that Mr. Elam

11    had made such an attempt.  This false police report caused considerable anguish and

12    embarrassment to Mr. Elam, as local police had contacted Mr. Elam's family.

13    Ultimately, Mr. Elam was forced to beg N.A. to tell his family that the suicide attempt

14    was not real.

15        Thus, a primary motivation and a determinative factor in N.A.'s motivation to

16    intercept Mr. Elam's conversation was to "commit a criminal, tortious, or other

17    injurious act."[3]  *Vest*, 639 F. Supp. at 904.  N.A.'s secret recording was part of a course

18    of harassment of Mr. Elam that included hacking into Mr. Elam's Apple account, an

19    unquestionably criminal act, and reporting a false suicide threat to police, which caused

20    Mr. Elam significant emotional pain and embarrassment.  Therefore, it is evident that

---

22       [2] N.A.'s recording was also illegal under California law, as California is a two-party consent jurisdiction.  Cal. Penal Code § 632.  N.A.'s acknowledgment of this illegality ("I need you to say ok, I'm recording this, I'm not allowed to talk to you otherwise") further demonstrates that N.A. made the recording for the purpose of committing a criminal act: violating § 632.  *See Deteresa v. Am. Broad. Co., Inc.*, 121 F.3d 460, 471 n.4 (9th Cir. 1997) (party could have presented evidence to demonstrate "purpose of committing any criminal or tortious act" with evidence that the conversation was taped for the purpose of violating Cal. Penal Code § 632.)

      [3] Although the *Vest* court found that the co-conspirator had the primary motivation to commit a criminal act and that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal act, it is clear that either factor may be demonstrated to merit suppression. *Vest*, 639 F.Supp. at 904.

1   N.A.'s purpose and motivation in secretly recording Mr. Elam was to harass and harm

2   him.  Mr. Elam indeed sensed this injurious intent when he terminated his conversation

3   with N.A. and objected to N.A.'s recording of the May 14 call.  As "criminal, tortious

4   or injurious acts" include recordings created with the purpose and intent to harm the

5   non-consenting party, N.A.'s surreptitiously recorded conversation with Mr. Elam must

6   be suppressed under §§ 2511 and 2515.

7                                              **IV.**

8                                        **CONCLUSION**

9           For all of the foregoing reasons, and following the statutory authority in 18

10   U.S.C. §§ 2510-22, Mr. Elam respectfully requests this Court exclude from trial the

11   surreptitiously recorded telephone conversation made by N.A. against Mr. Elam.

12

13                                    Respectfully submitted,

14                                    HILARY POTASHNER
                                      Federal Public Defender

15

16
     DATED:  October 19, 2015          By   */s/ Lisa Shinar LaBarre*
17
                                      LISA SHINAR LABARRE
18                                    CRAIG A. HARBAUGH
                                      Deputy Federal Public Defenders
19                                    Attorneys for DAVID ELAM

20

21

22

23

24

25

26

27

28

                                            10