1   EILEEN M. DECKER
    United States Attorney
2   PATRICIA A. DONAHUE
    Assistant United States Attorney
3   Chief, National Security Division
    RYAN WHITE (Cal. Bar No. 255201)
4   STEPHANIE CHRISTENSEN (Cal. Bar No. 236653)
    Assistant United States Attorney
5   Cyber & Intellectual Property Crimes Section
         1500 United States Courthouse
6        312 North Spring Street
         Los Angeles, California 90012
7        Telephone: (213) 894-2296/3756
         Facsimile: (213) 894-0141
8        E-mail:    ryan.white@usdoj.gov
                    Stephanie.christensen@usdoj.gov
9
    Attorneys for Plaintiff
10  UNITED STATES OF AMERICA

11                  UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,          No. CR 14-368-MMM

14            Plaintiff,               GOVERNMENT'S MOTION *IN LIMINE* TO
                                       ADMIT EVIDENCE REGARDING VICTIM
15            v.                       M.V. PURSUANT TO FEDERAL RULE OF
                                       EVIDENCE 404(b), OR,
16  DAVID ELAM,                        ALTERNATIVELY, TO PERMIT CROSS-
                                       EXAMINATION OF DEFENDANT USING
17            Defendant.               SUCH EVIDENCE PURSUANT TO FEDERAL
                                       RULE OF EVIDENCE 608(b) OR
18                                     TESTIMONY IN REBUTTAL AS
                                       IMPEACHMENT BY CONTRADICTION;
19                                     EXHIBIT A

20                                     Hearing Date: November 9, 2015
                                       Hearing Time: 1:15 p.m.
21                                     Location:     Courtroom of the
                                                     Hon. Margaret M.
22                                                   Morrow

23

24       Plaintiff United States of America, by and through its counsel

25  of record, the United States Attorney for the Central District of

26  California and Assistant United States Attorneys Stephanie

27  Christensen and Ryan White, hereby files its motion *in limine* to

28  admit evidence regarding victim M.V. pursuant to Federal Rule of

Evidence 404(b).  Alternatively, the government seeks an order permitting cross-examination of defendant, should he testify, using such evidence, pursuant to Federal Rule of Evidence 608(b), or, if appropriate, permitting the government to call victim M.V. as a rebuttal witness to impeach defendant by contradiction.

This motion is based upon the attached memorandum of points and authorities, Exhibit A, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 19, 2015          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, Criminal Division


            /s/
RYAN WHITE
STEPHANIE CHRISTENSEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION...................................................1

II.  STATEMENT OF FACTS.............................................2

     A.   Defendant Threatens to Make N.A. Want to Kill Herself
          and Accesses Her Facebook Account Without
          Authorization............................................2

     B.   Defendant Posts Nude Photos and Sexually Explicit
          Videos of N.A. Online, and Encourages Men to Have Sex
          With Her.................................................4

     C.   Defendant Swats N.A., Attempts to Get N.A. Expelled
          from Law School, and Continues Posting Online...........6

     D.   Defendant Obstructs the Federal Investigation...........7

     E.   Newly Discovered Victim, M.V............................7

III. ARGUMENT......................................................9

     A.   The Charges.............................................9

     B.   Defendant's Stalking and Hacking of Victim M.V. Should
          Be Admitted Pursuant to Rule 404(b)....................11

     C.   Alternatively, the Government Should Be Permitted to
          Cross-examine Defendant, Should He Testify, Using Such
          Evidence, Pursuant to Federal Rule of Evidence 608(b)..14

     D.   Alternatively, Should Defendant Open the Door, the
          Government Should Be Permitted to Call M.V. as a
          Rebuttal Witness, Pursuant to Federal Rule of Evidence
          607....................................................16

IV.  CONCLUSION...................................................16

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

3

CASES

4

<u>Huddleston v. United States</u>,
       485 U.S. 681 (1988)...........................................12

5

<u>United States v. Banks</u>,
       514 F.3d 959 (9th Cir. 2008)................................12

6

7

<u>United States v. Blitz</u>,
       151 F.3d 1002 (9th Cir. 1998)...............................11

8

<u>United States v. Castillo</u>,
       181 F.3d 1129 (9th Cir. 1999)...........................15, 16

9

10

<u>United States v. Cherer</u>,
       513 F.3d 1150 (9th Cir. 2008)...............................14

11

<u>United States v. Curtin</u>,
       489 F.3d 935(9th Cir. 2007) .............................11, 12

12

13

<u>United States v. Geston</u>,
       299 F.3d 1130 (9th Cir. 2002)...............................15

14

<u>United States v. Hadley</u>,
       918 F.2d 848 (9th Cir. 1990)............................12, 14

15

16

<u>United States v. Hunt</u>,
       526 F.3d 739 (11th Cir. 2008)...............................11

17

<u>United States v. Lozano</u>,
       623 F.3d 1055 (9th Cir. 2010)...............................12

18

19

<u>United States v. Luna</u>,
       21 F.3d 874 (9th Cir. 1994).................................12

20

<u>United States v. Skillman</u>,
       922 F.2d 1370 (9th Cir. 1990)...............................14

21

22

<u>United States v. Sneezer</u>,
       983 F.2d 920 (9th Cir. 1992)................................11

23

<u>United States v. Vo</u>,
       413 F.3d 1010 (9th Cir. 2005)...............................12

24

25

<u>United States v. Williams</u>,
       464 F.3d 443 (3d Cir. 2006).................................15

26

<u>United States v. Ziska</u>,
       2008 WL 510342 (9th Cir. 2008)..............................16

27

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

STATUTES

18 U.S.C. § 1028A(a)(1).........................................................1, 10

18 U.S.C. § 1030(a)(2)(C).......................................................1, 10

18 U.S.C. § 1519...........................................................1, 10, 11

18 U.S.C. § 2261A(2)(A).....................................................1, 9, 10

18 U.S.C. § 2265A..............................................................13

RULES

Fed. R. Evid. 404(b)...........................................................11

Fed. R. Evid. 607..............................................................16

Fed. R. Evid. 608(b)(2)........................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendant David Elam ("defendant") is charged in a four-count indictment with cyberstalking (18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5)); unauthorized access to a protected computer to obtain information in furtherance of a criminal act (18 U.S.C. §§ 1030(a)(2)(C), (b), (c)(2)(B)(ii)); aggravated identity theft (18 U.S.C. § 1028A(a)(1)); and destruction of records in a federal investigation (18 U.S.C. § 1519).  The charges stem from a period between May and July 2013 in which defendant stalked his ex-girlfriend, victim N.A., by, among other things, creating a fake online account in her likeness and encouraging men to contact her for sex, accessing or attempting to access her Facebook account, posting sexually explicit photographs and videos to the Internet, sending emails containing links to those photographs and videos to her family and friends, attempting to destroy her reputation at the law school she was attending, and reporting to the Santa Monica Police Department that she was distributing narcotics out of her home.

On October 1, 2015, the U.S. Attorney's Office learned that defendant had victimized another woman, M.V., in 2012.  Follow-up investigation has revealed that, after being rebuffed by M.V., defendant, among other things, hacked into her online accounts, impersonated her and had conversations with others encouraging them to "hook up" with her and falsely portraying to them that she was pregnant, and created an email account in her likeness to contact her family and friends.

Trial is scheduled for November 17, 2015.  With this motion, the government seeks an order to admit evidence regarding victim M.V.

pursuant to Federal Rule of Evidence 404(b) as proof of motive, intent, plan, knowledge, identity, and absence of mistake or accident.[1]   Alternatively, the government seeks an order permitting cross-examination of defendant, should he testify, using such evidence, pursuant to Federal Rule of Evidence 608(b), or, if appropriate, permitting the government to call victim M.V. as a rebuttal witness to impeach defendant by contradiction.

## II.   STATEMENT OF FACTS

The government expects to prove the following facts at trial:

### A.   Defendant Threatens to Make N.A. Want to Kill Herself and Accesses Her Facebook Account Without Authorization

Victim N.A. met defendant in November 2012 on the dating site OkCupid.   They communicated online for a few months — N.A. located in California and defendant located in Virginia — meeting up once in the Central District of California in February 2013.   During the course of their relationship, N.A. sent defendant numerous photographs, many of which were nude and otherwise sexually explicit, and approximately four sexually explicit videos.

In early May 2013, defendant decided to end the relationship because (according to him) N.A. was too high-maintenance and (according to N.A.) he suspected her of cheating on him.   On May 8, 2013, the following text message conversation occurred.   As part of this text message string, defendant sent N.A. two pictures she had previously sent him — and only him — during their relationship, both of which were sexually explicit.

---

[1] Having interviewed victim M.V. on October 13, 2015, the government gave notice to defendant on October 14, 2015, regarding its intent to introduce such evidence pursuant to Rules 404(b) and 608.

1

2    DEFENDANT:      What's this about?

3    N.A.:     I was exploring how you may have accessed my
     stuff, but I deleted the attempt immediately so it's
4    nothing.

5    DEFENDANT:      Please don't do this.  Please don't mess
     with my stuff.  I'm sure you have better things to do. Both
6    of us would rather me feel sorry for you than pissed at you

7    N.A.:     Deal

8    DEFENDANT:      Plus if my email/iTunes/Facebook is
     compromised that would allow people to see vids, pics,
9    messages neither of us want people to see . . .

10   N.A.:     You don't have to worry about that, it won't
     happen.
11
     DEFENDANT:   I'm not worried.  But attempting to access
12   someone else's accounts could jeopardize bar admittance.

13   DEFENDANT:      But I did find it ironic how paranoid you
     were last night.  Good thing it ended before you had some
14   real explaining to do

15   DEFENDANT:      That awkward moment when errbody seent what
     I seent. . .  Hopefully ogurl can flip a burger or two
16
     DEFENDANT:      I'm an asshole.  Sucks for you.
17
     N.A. also had a recorded phone conversation that day with
18
defendant.  Defendant ended the May 8, 2013 conversation by stating
19
the following:
20
     N.A.:      I need to. . . I need to hang up in a second. . .
21
     DEFENDANT:      Fuck you. . . I mean like, fuck this
22   whatever. . . you're done you're ruined cause I will see to
     it after this. . . fuckin. . . I'll put it this way,
23   fuckin. . . it would take an act of fuckin God for you to
     pass the bar.  It would take an act of God for you to make
24   it through law school without killing yourself after what I
     do to you.[2]
25

26

27   ────────────────

          [2] Earlier in their relationship, N.A. had talked to defendant
28   about her brother's suicide, and how this topic was sensitive to her.

                                    3

That same day, N.A. received two emails from Facebook, which she provided to the FBI.  The first indicated that "[s]omeone tried to change [her] Facebook password and login email using the account recovery process."  About 20 minutes later, she received an email from Facebook stating that "[s]omeone tried to change[her] Facebook password and set [her] login email to +15405807800 by answering [her] security question" from IP address 108.4.173.180.  The phone number (540) 580-7800 is defendant's number, and the IP address listed in the email ties back to his residence.  Somebody also attempted to reset the password to N.A.'s Twitter account that same day as well.

**B.   Defendant Posts Nude Photos and Sexually Explicit Videos of N.A. Online, and Encourages Men to Have Sex With Her**

As promised in his phone conversation, defendant then began a campaign to harass N.A.  In all, defendant's conduct resulted in nude and sexually explicit photographs and videos being posted to at least 24 websites.

On May 9, 2013, defendant created a public OkCupid account using a variant of N.A.'s name, along with numerous images N.A. had sent only to defendant — including one of her in her bra and another that depicts a recently used sex toy.  He posted Q&A answers on the site that overtly indicated N.A. was interested in sex, and revealed that she lived in Santa Monica, CA.  He then engaged in conversations with over 20 users encouraging them to contact N.A. for a tryst.  A sampling of those conversations are as follows.  In these conversations, defendant gave out N.A.'s true cell phone, which is how she became aware of the OkCupid profile (because at least nine of the OkCupid users contacted N.A. directly, one of whom stated that he was on the road to her house later that night):

4

LovingUs

- nee_coal: I'll be honest with you. I've been studying for the past 72 hours straight. I'm sexually frustrated and tired. Lets cut the bullshit and chivalry act. I just need a good clean hookup.

- LovingUs: I am ready! Lets make a date.

- nee_coal: I can hang out tomorrow after my final. In the mean time text me a pic/appetizer for tomorrow. Ill be your dessert.

1cadillac

- 1cadillac: nice i like your style.im at work at the moment and im off at 6:00 p.m. tonight do you wanna meet tonight i could come to your place or we could get a room how ever you feel more comfortable.oh yeah what is your cell number?

- nee_coal: You should just come over. I could use a study break. Hopefully you'll break me off. Can I get a taste of what I'll be tasting tonight? Pic please.

attybush

- attybush: I'm down in North San Diego County. Are you inviting me up to help relieve your stress?

- nee_coal: I most definitely am

The next day, on May 10, 2013, defendant spoke with a detective from the Salem, Virginia Police Department who had come to investigate defendant's conduct toward N.A. and admitted to creating online profiles of N.A. (including OkCupid) and to showing nude pictures of N.A. to his friends.  Undeterred, that same day defendant posted a sexually explicit video to the pornography website www.xhamster.com entitled "[N.A.] plays with her haggard snatch." N.A. received text messages from at least three men in response to this video, indicating some communication between those men and defendant had occurred.

Defendant continued his harassment on May 11, 2013, when he started targeting N.A.'s family and friends.  That day, he spoofed

5

the email account of one of N.A.'s law school classmates and sent an email to N.A.'s mother with a link to an Xtube.com page.  That page had a video of N.A. masturbating that she had sent only to defendant, entitled "Former Pepperdine Law student turned video vixen bate."  He sent a similar email to one of her classmates using a spoofed account of Kenneth Starr.

On May 12 and 14, 2013, despite being served with a Temporary Restraining Order, defendant uploaded two videos to the pornography website hardsextube.com, both of which N.A. had sent only to defendant.

### C.   Defendant Swats N.A., Attempts to Get N.A. Expelled from Law School, and Continues Posting Online

Defendant resurfaced on June 10, 2013, when he submitted an online complaint to the Santa Monica Police Department ("SMPD") stating that N.A. was distributing Xanax, Valium, Adderall, and medical marijuana out of her home and at Pepperdine.  On July 3, 2013, the SMPD visited N.A's residence to investigate.

On June 17, 2013, defendant sent an email to N.A.'s law school dean and numerous classmates with a link to a presentation.  That presentation — a copy of which was found in defendant's personal email account — provided excerpts of numerous Pepperdine Law School Honor Code provisions, followed by text messages between N.A. and defendant purportedly establishing that N.A. had violated Pepperdine's honor code.  Among the violations he included were possession or distribution of prescription drugs, having others edit your papers, and vandalizing school property.

On June 25, 2013, defendant again posted nude photographs of N.A., this time to Ugotposted.com.  On July 19, 2013, defendant

6

posted one of the sexually explicit videos of N.A. he had previously posted on Xhamster.com to Motherless.com.

**D.    Defendant Obstructs the Federal Investigation**

On September 17, 2013, the FBI executed a search warrant at defendant's residence.  Among other things, the FBI seized a laptop, two iPhones, and an iPad.  Defendant admitted in his interview with the FBI that the laptop, one of the iPhones, and the iPad would contain evidence of his crimes.

Shortly after the agents left his house, defendant executed a remote-wipe command for his personal iPhone.  A few days later, he did it again, and also tried to remotely wipe his laptop and his iPad.  When the digital devices arrived at FBI Los Angeles, defendant's personal iPhone had been successfully wiped, whereas the other devices had not.

**E.    Newly Discovered Victim, M.V.**

On September 29, 2015, victim M.V. reached out to N.A.'s counsel inquiring whether the David Elam she had seen in the news was the same David Elam who had harassed her in 2012.  The FBI followed up with M.V., and learned the following:

Defendant and M.V. were in a relationship in 2011.  In December 2011, M.V. began to distance herself from defendant.  In late January 2012, after M.V. rebuffed defendant's attempt to get back together, defendant called, text messaged, and emailed M.V. with messages stating "you are going to regret everything."  Those messages included screenshots of text messages between M.V. and a different ex-boyfriend, demonstrating that defendant had somehow accessed her phone.  Defendant also sent M.V. messages reading "4 3 2 1" and "Tick tock you time is ticking."

M.V. then received text messages and phone calls from men claiming to have spoken with her on the pornographic website www.xhamster.com (one of the pornographic websites defendant used to post sexually explicit images/videos of victim N.A.).  The messages these men sent to her were sexual in nature and graphic.

According to M.V., defendant had also hacked into her Gmail, Facebook, and iCloud accounts.  While in M.V.'s Gmail account, defendant emailed a fake ultrasound picture with her name and date of birth to all of her contacts, including parents, friends, and mentors.  M.V. was not pregnant at the time, so the ultrasound was falsified.

While in M.V.'s iCloud account, defendant read her text messages and sent M.V. a message regarding an attorney she had consulted stating, "what the fuck is he going to do."  Defendant eventually sent a remote wipe command to M.V.'s Apple iPhone (just as he did to his own iDevices after they were seized by law enforcement) while in control of her iCloud account.

Defendant also created a Gmail account that was identical to M.V.'s, except that it added the number "89" to the end.  He used that account to portray himself as M.V. in communications with M.V.'s friends and family.

After M.V. filed a police report with the Fulton County Police Department in Georgia, the detective discovered that internet protocol addresses for at least some of the above-described activity went back to defendant's parents' residence.  M.V. also obtained a restraining order against defendant.  Defendant was charged with computer trespassing and computer forgery, though the indictment was placed on the "dead docket" due to an inability to locate defendant.

At the time of the conduct against M.V., defendant was living in the Atlanta area.  A year later, at the time of his conduct against victim N.A., he had moved to Virginia.

**III. ARGUMENT**

Defendant's stalking of victim M.V. and hacking of M.V.'s accounts should be admitted pursuant to Rule 404(b).  Alternatively, the government seeks an order permitting cross-examination of defendant, should he testify, using such evidence, pursuant to Federal Rule of Evidence 608(b), or, if appropriate, permitting the government to call victim M.V. as a rebuttal witness to impeach defendant by contradiction.

**A.   The Charges**

To establish a violation of cyberstalking (18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5)), the government must prove the following:

Defendant:

(1)   with the intent to harass or to cause substantial emotional distress;

(2)   to a person in another state;

(3)   used the mail, any interactive computer service, or any facility of interstate or foreign commerce;

(4)   to engage in a course of conduct;

(5)   that causes substantial emotional distress to that person.

18 U.S.C. § 2261A(2)(A).[3]

---

[3] Section 2261A was amended in October 2013.  However, defendant's stalking took place prior to the amendment's effective date.  Thus, the above-cited version of § 2261A is applicable to defendant's conduct.

9

To establish a violation of unauthorized access to a protected computer to obtain information in furtherance of a criminal act (18 U.S.C. §§ 1030(a)(2)(C), (b), (c)(2)(B)(ii)), the government must prove the following:

    (1)  Defendant intentionally accessed, or attempted to access, without authorization, a protected computer; and

    (2)  defendant committed the offense in furtherance of a criminal act.

18 U.S.C. § 1030(a)(2)(C), (b), (c)(2)(B)(ii).

To establish a violation of aggravated identity theft (18 U.S.C. § 1028A(a)(1)), the government must prove the following:

    (1)  Defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person;

    (2)  defendant knew that the means of identification belonged to a real person; and

    (3)  defendant's use of the means of identification was during and in relation to the felony violation described in the indictment.

Ninth Circuit Model Criminal Jury Instruction No. 8.83  (2010 ed.).

To establish a violation of destruction of records in a federal investigation (18 U.S.C. § 1519), the government must prove the following:

    (1)  Defendant knowingly makes alters, destroys, conceals, or covers up any record, document, or tangible object;

    (2)  with intent to impede, obstruct or influence a federal investigation.

18 U.S.C. § 1519; <u>United States v. Hunt</u>, 526 F.3d 739 (11th Cir. 2008).

**B.   Defendant's Stalking and Hacking of Victim M.V. Should Be Admitted Pursuant to Rule 404(b)**

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts," while not admissible to prove bad character or propensity, may be offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Case law recognizes that Rule 404(b) is a rule of "inclusion," and the district court has wide discretion to decide whether to admit such evidence. <u>United States v. Blitz</u>, 151 F.3d 1002, 1007-08 (9th Cir. 1998); <u>United States v. Sneezer</u>, 983 F.2d 920, 924 (9th Cir. 1992) ("'evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities . . . .'"). "Once it has been established that the evidence offered serves one of these purposes . . . the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence." <u>United States v. Curtin</u>, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).

Evidence is admissible under Rule 404(b) if:

(1) the evidence tends to prove a material point;

(2) the prior act is not too remote in time;

(3) the evidence is sufficient to support a finding that the defendant committed the other act; and

(4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

11

1  United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005) (internal
2  quotation marks omitted); United States v. Lozano, 623 F.3d 1055,
3  1059 (9th Cir. 2010) (quoting United States v. Banks, 514 F.3d 959,
4  976 (9th Cir. 2008)).

5      "Extrinsic acts evidence may be critical to the establishment of
6  the truth as to a disputed issue, especially when that issue involves
7  the actor's state of mind and the only means of ascertaining that
8  mental state is by drawing inferences from conduct." Huddleston v.
9  United States, 485 U.S. 681, 685 (1988). See Curtin, 489 F.3d at 944
10 ("Rule 404(b) is a rule of inclusion - not exclusion - which
11 references at least three categories of other 'acts' encompassing the
12 inner workings of the mind: motive, intent, and knowledge."). If the
13 prior act is used to prove intent, it must be similar to the offense
14 charged. United States v. Hadley, 918 F.2d 848, 851 (9th Cir. 1990)
15 (citation omitted). Also, when the other acts evidence is introduced
16 to prove identity, "the characteristics of the other crime or act
17 must be sufficiently distinctive to warrant an inference that the
18 person who committed the act also committed the offense at issue."
19 United States v. Luna, 21 F.3d 874, 878-79 (9th Cir. 1994) (internal
20 quotation marks omitted).

21     Defendant's cyberstalking of victim M.V. and hacking of M.V.'s
22 accounts are relevant to and probative of defendant's motive, intent,
23 plan, knowledge, identity, and absence of mistake or accident related
24 to the charged crimes. Indeed, as to the cyberstalking charge, the
25 government is required to prove that the defendant intended to harass
26 or cause substantial emotional distress; as to the hacking violation,
27 the government is required to prove that defendant intentionally
28 accessed, or attempted to access, without authorization, a protected

computer.  That defendant harassed M.V. and hacked into M.V.'s accounts is probative of whether he had the motive and intent to do so here to victim N.A.

Defendant's acts toward M.V. are also very similar to the actions he took toward N.A.  Shortly after he sent both threatening messages, he accessed or attempted to access both of their online accounts, created fictitious online accounts in both victims' names, impersonated both victims in conversations with men and provided those men with the victims' numbers, and used www.xhamster.com for both offenses.  Thus, introduction of this evidence is probative of identity, plan, and absence of mistake or accident.  Moreover, that defendant remotely wiped M.V.'s iPhone is probative of his knowledge and identity for the alleged remote wiping of his own iPhone as charged in the Indictment.

Additionally, as described above, the evidence tends to prove a material point, in that it goes to the heart of mens rea and identity.  Nor is it too remote in time, as defendant's actions toward M.V. occurred just over one year prior to his stalking of victim N.A.[4]  The evidence is also sufficient to support a finding that defendant committed the other act, as M.V. will testify that, at the commencement of the activity, she received calls, text messages, and emails from defendant that contained threatening communications and also screenshots demonstrating that he had accessed at least one of her online accounts.  Shortly thereafter, the activity described above, which is strikingly similar to the activity alleged in this

---

[4] Notably, had defendant been located and convicted of the stalking of M.V. before he stalked victim N.A., his statutory maximum sentence for the instant offense would double.  18 U.S.C. § 2265A.

case, occurred.  Some of that activity, including creating a fake account in the likeness of M.V., ties back to defendant's parents' residence by internet protocol address.

If the evidence satisfies Rule 404(b), "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008) (internal quotation marks omitted). The fact that a defendant's case will be harmed by the admission of the prior act evidence does not constitute unfair prejudice.  United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990).  Here, any potentially unfair prejudice can be negated by the use of a limiting instruction to the jury.[5] Hadley, 918 F.2d at 852.

**C. Alternatively, the Government Should Be Permitted to Cross-examine Defendant, Should He Testify, Using Such Evidence, Pursuant to Federal Rule of Evidence 608(b)**

In the alternative, should defendant testify, the government should be permitted to cross-examine him using evidence of M.V., pursuant to Federal Rule of Evidence 608(b).

Rule 608(b) provides:

(b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are

---

[5] The Ninth Circuit Model Criminal Jury Instruction concerning other acts evidence provides:

You have heard evidence that defendant committed other crimes, wrongs, or acts not charged here.  You may consider this evidence only for its bearing, if any, on the question of the defendant's intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake or absence of accident, and for no other purpose.

Ninth Circuit Model Criminal Jury Instruction No. 4.3 (2010 ed.)

14

probative of the character for truthfulness or untruthfulness of:

> (1) the witness; or

> (2) another witness whose character the witness being cross-examined has testified about.

Although Rule 608(b) may not be used "to impeach a witness' credibility in terms of his general veracity," United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999), judges are expected to employ Rule a 403 balancing analysis to determine whether impeaching evidence is admissible.  See, e.g., United States v. Geston, 299 F.3d 1130, 1137 (9th Cir. 2002) ("Specific bad act evidence is admissible under Rule 608(b) 'for the purpose of attacking or supporting the witness's credibility' if it is probative of the 'witness's character for truthfulness or untruthfulness' or 'challenges a witness's credibility'"); United States v. Williams, 464 F.3d 443, 448 (3d Cir. 2006).  Therefore, if defendant elects to testify and testifies inconsistent with the facts stated above regarding M.V., for example, by claiming that he could not have remotely wiped his iPhone because he does not know how to do so, the government should be permitted to cross-examine him using what it has learned from victim M.V. Likewise, if, for example, defendant questions the credibility of victim N.A through his testimony, that may open the door to cross-examination using evidence regarding M.V., which would tend to disprove defendant's assertions regarding N.A.'s credibility.  See Fed. R. Evid. 608(b)(2).

**D. Alternatively, Should Defendant Open the Door, the Government Should Be Permitted to Call M.V. as a Rebuttal Witness, Pursuant to Federal Rule of Evidence 607**

In the alternative, should defendant open the door, the government should be permitted to call M.V. as a rebuttal witness, which may be permissible impeachment by contradiction.

"The concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence:

> [D]irect-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral.  This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine."

Castillo, 181 F.3d at 1132-33; United States v. Ziska, 2008 WL 510342 (9th Cir. 2008) ("The rebuttal testimony of Vincent Cobbald and Ryan Ziska was admissible as impeachment by contradiction.  Fed. R. Evid. 607.  Ziska opened the door to this rebuttal when his defense witnesses testified that he was opposed to drug use and not a racist."); Fed. R. Evid. 607.

Accordingly, should defendant open the door, the government should be permitted to call M.V. as a rebuttal witness to impeach by contradiction.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court admit evidence regarding victim M.V. pursuant to Federal Rule of Evidence 404(b) as proof of motive, intent, plan, knowledge, identity, and absence of mistake or accident. Alternatively, the government seeks an order permitting cross-

16

examination of defendant, should he testify, using such evidence, pursuant to Federal Rule of Evidence 608(b), or, if appropriate, permitting the government to call victim M.V. as a rebuttal witness to impeach defendant by contradiction.